458 A.2d 1352

The HARRISBURG CHAPTER OF the AMERICAN CIVIL LIBERTIES UNION, et al., Appellants,

v.

Robert G. SCANLON, in his official capacity as Secretary of Education of the Commonwealth, et al.

Supreme Court of Pennsylvania.

Argued March 9, 1983.

Decided April 26, 1983.

Arthur L. Berger, Richard L. McCoy, Harrisburg, for appellants.

Allan W. Holman, Jr., Sol., for West Perry School Dist.

Robert L. Rubendall, Sol., for Halifax School Dist.

Michael L. Harvey, Deputy Atty. Gen., for Robert G. Scanlon.

James D. Flower, Carlisle, for Carlisle School Dist.

Before ROBERTS, C.J., and NIX, LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON and ZAPPALA, JJ.

## ORDER

PER CURIAM.

Order of Commonwealth Court affirmed.

ROBERTS, C.J., files a dissenting opinion in which FLAHERTY, J., joins.

ROBERTS, Chief Justice, dissenting.

I dissent and would remand the record to the Commonwealth Court with instructions to enter the consent decree which has been willingly and freely entered into by the parties.

This lawsuit began in May of 1982 when appellants filed an original action in the Commonwealth Court seeking to enjoin certain activities alleged to violate the Establishment Clauses of the United States and Pennsylvania Constitutions. Named as defendants were the Carlisle School District, the West Perry School District, the Halifax Area School District, and Robert G. Scanlon, in his official capacity as Secretary of Education of the Commonwealth. The complaint against the school districts sought declaratory and injunctive relief against (1) the reading of the Bible over the schools' public address systems, (2) the inclusion in the schools' curricula of word-memorization courses focusing exclusively on scriptural verses, and (3) the use of school facilities for faculty and student prayer and Bible meetings both during and after school hours. The complaint against the Secretary of Education sought to enjoin the Secretary from disbursing federal and state monies to the school districts so long as the allegedly unconstitutional activities continued, and to compel him, by way of a writ of mandamus, to take steps to bring the school districts into compliance with federal and state law.

From the outset, the school districts expressed a desire to terminate the litigation as quickly and as amicably as possible. Immediately upon receiving the complaint, each district filed an answer which conceded that some of the activities complained of had taken place but which stated that steps

had been taken to ensure that the challenged practices would be discontinued. After a period of negotiation, appellants and the districts agreed to a proposed consent decree, the terms of which provided that the districts would be prohibited from permitting any of the challenged activities for a period of five years. Appellants and the districts then joined in a petition to the Commonwealth Court for entry of the decree.

Notwithstanding the fact that the school districts had willingly agreed to the terms of the proposed consent decree, and notwithstanding the numerous assertions in the record of the districts' desire to avoid prolonged and expensive litigation, the Commonwealth Court refused to enter the decree. The court observed that whether certain conduct violates the Establishment Clause is a "turbid question" requiring "painstaking legal and factual analysis," and concluded, on the basis of *Widmar v. Vincent,* 454 U.S. 263, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981), that entry of the consent decree might "result in the institution of litigation by the faculty or students against the School Districts on the basis that the decree violates the individuals' First Amendment civil liberties." Appellants filed a petition for permission to appeal from the interlocutory order refusing to enter the decree, which this Court granted. The school districts have not opposed the relief requested by appellants; indeed, they have supported not only the request for interlocutory review but also the request for reversal of the Commonwealth Court's order.

Contrary to the view expressed by the Commonwealth Court, there is, on this record, no valid constitutional basis for refusing to enter the proposed decree. Two decades ago the Supreme Court of the United States held that the reading of the Bible over a school's public address system had a clear religious purpose and hence was forbidden by the Establishment Clause. *School Dist. of Abington Twp. v. Schempp,* 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963). Although the Supreme Court has never specifically ruled on the constitutionality of a public school's inclusion of scrip-

ture memorization courses in its curriculum, it has made it clear that any practice in the public schools that has the primary purpose or effect of advancing religion is invalid. See, e.g., *Stone v. Graham,* 449 U.S. 39, 101 S.Ct. 192, 66 L.Ed.2d 199 (1980). As it is evident on this record that the primary purpose of the scripture memorization courses is to advance the dissemination of religion, this practice, too, must be deemed constitutionally invalid.

As to the schools' permitting the use of school facilities for prayer and Bible meetings, the Commonwealth Court's reliance on *Widmar v. Vincent,* supra, is misplaced. In *Widmar,* although the Supreme Court invalidated a state university's regulation which prohibited the use of university buildings and grounds by student organizations intending to engage in religious worship and discussion, the Court in no respect suggested that the groups had a right to use public facilities in all circumstances. Rather, the Court held only that where a university has created a "public forum" by routinely making its facilities available for use by student organizations, it may not single out religious groups and prohibit them from using those facilities, as such an exclusion would constitute an unconstitutional content-based discrimination against religious speech. Here, there is no indication on the record that the prayer and Bible meetings were held pursuant to an open-forum policy which permits groups and speakers of all kinds to use school facilities. Absent any indication that the schools maintain an open forum, it cannot be said that the proposed consent decree would oblige the districts to enforce a content-based discrimination against religious speech.

There is nothing to indicate that the proposed consent decree was procured by fraud, mistake, or overreaching, or that entry of the decree would exceed the jurisdiction of the court. Nor is there any suggestion that the proposed relief would require an onerous amount of judicial supervision. In these circumstances, the refusal to enter the consent decree constituted a manifest abuse of discretion, serving only to impose an unnecessary burden on litigants willing and eager

to resolve their disputes without the additional consumption of scarce and costly judicial resources.

The order of the Commonwealth Court should be reversed and the consent decree entered on the record.

FLAHERTY, J., joins in this dissenting opinion.